**UNITED STATES, Appellee,**

v.

**Specialist Four Mark E. ARTHURS, . 386–72–4372, United States Army, Appellant.**

**SPCM 19531.**

U.S. Army Court of Military Review.

24 Dec. 1985.

For Appellant: Lieutenant Colonel William P. Heaston, JAGC, Captain Harry L. Williams, JAGC, Captain Kenneth G. Gale, JAGC, Captain Craig E. Teller, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gra-velle, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, Captain Samuel J. Rob, JAGC (on brief).

Before WOLD, FELDER, and NAUGHTON, Appellate Military Judges.

**OPINION OF THE COURT**

WOLD, Senior Judge:

On 28 April 1983, appellant pleaded guilty and was convicted by a military judge sitting as a special court-martial of wrongfully distributing hashish on diverse occasions between July 1982 and January 1983. He was sentenced to a bad-conduct discharge, confinement at hard labor for 90 days, forfeiture of $382.00 pay per month for three months, and reduction to the grade of Private E–1. The convening authority approved the sentence, but suspended for six months from the date of trial the confinement at hard labor adjudged in excess of 75 days.

Appellant now contends that the convening authority, Major General Thurman E. Anderson, was disqualified to take initial action in his case, that he was deprived of favorable character witnesses and thereby denied a fair sentencing proceeding, and that General Anderson was disqualified to refer his case to trial.[1]

We are satisfied that General Anderson was not disqualified to refer appellant's case to trial. *See United States v. Treakle,* 18 M.J. at 654–55. The issue of General Anderson's qualification to take initial action is controlled by *United States v. Scott,* 20 M.J. 1012 (A.C.M.R.1985).[2]

During the extenuation and mitigation portion of appellant's sentencing proceedings, appellant's shop supervisor, his platoon sergeant, and his assistant squad leader testified on his behalf. Two of these

1. *See United States v. Treakle,* 18 M.J. 646 (A.C. M.R.1984) (en banc), *pet. granted,* 20 M.J. 131 (C.M.A.1985) and *United States v. Yslava,* 18 M.J. 670 (A.C.M.R.1984) (en banc), *pet. granted,* 19 M.J. 281 (C.M.A.1985), for a detailed discussion of the evidence relating to command influence in the 3d Armored Division during the time General Anderson was in command.

2. Appellant does not contend that his plea of guilty was affected by General Anderson's actions. Our examination of the evidence of record convinces us that the validity of appellant's plea of guilty remains unaffected.

witnesses described appellant's duty performance as outstanding while the other characterized his performance as above average. All three witnesses stated that appellant had not been a disciplinary problem and that he should be retained in the Army. A stipulation of expected testimony from a non-commissioned officer who was a member of appellant's unit described appellant as an outstanding soldier who should be retained. The government presented no evidence to rebut the testimony of the defense witnesses.

We find that appellant was in fact denied no favorable character witnesses.[3]

In *United States v. Anderson*, 21 M.J. 670 (A.C.M.R.1985), we held that the generalized evidence we had about the effect of General Anderson's actions was sufficient to allow a reasonable person to conclude that "at least one member of the chain of command of every 3d Armored Division soldier believed that General Anderson did not want favorable character testimony for accused soldiers.... As to such a potential witness, the rebuttable presumption would apply that he had succumbed to unlawful pressure and complied with General Anderson's perceived desires." 21 M.J. at 675. In the case at bar, we have the same generalized evidence but we also have particularized evidence of what happened during appellant's trial, *i.e.*, the fact that the most knowledgeable portion of appellant's chain of command gave favorable character testimony. This evidence logically compels the conclusion that appellant's potential character witnesses were not affected by General Anderson's actions. It is plain that if appellant's potential witnesses heard General Anderson's message, they either did not under-

stand the general to be opposing favorable character testimony or refused to comply with such a perceived directive.[4]

The record of trial is returned to The Judge Advocate General for transmission to a different convening authority to take action in accordance with our decision in *United States v. Scott*.

Judge FELDER concurs.

NAUGHTON, Judge, concurring:

See my concurring opinion in *United States v. Anderson*, 21 M.J. 670, 679 (ACMR 1985).

---

**3.** Even without such a finding, we would be unable to grant relief on the evidence before us, since that evidence fails to "particulariz[e] the manner in which [appellant's] court-martial was adversely affected by the conduct of the convening authority." *See Silas v. United States*, 21 M.J. 108 (C.M.A.1985) (interlocutory order), *petition for extraordinary relief denied*, 21 M.J. 295 (C.M.A.1985) (order); *United States v. Anderson*, 21 M.J. 670, 675 (A.C.M.R.1985).

**4.** In this case, the issue of whether General Anderson's comments had reached appellant's chain of command and had been interpreted as opposing favorable character testimony for accused soldiers, while raised by the generalized evidence, is resolved against appellant by consideration of particularized evidence. In other cases, of course, particularized evidence may reinforce, rather than rebut, the generalized evidence.